UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
09-CV-1736(JMR/FLN)


In re:  Arrowhead Capital          )
Management LLC Class               )
Litigation                         )                    ORDER


     This lawsuit is one of many arising from the collapse of Tom

Petters' $3 billion Ponzi scheme.    Each defendant, separately,

moves to dismiss plaintiffs' putative class action complaint.    The

motions to dismiss are granted.

     Plaintiffs purchased shares in an investment fund.    The fund,

in turn, invested in a number of Petters-affiliated entities.

When, in September 2008, Petters' house of cards collapsed,

plaintiffs' investments vaporized with it.    Plaintiffs are suing

the investment fund managers and outside auditor, hoping to recoup

some or all of their losses.    The Court offers no opinion as to the

validity of plaintiffs' substantive claims against their investment

managers or the auditors.    The Court has no such opinion because,

on consideration of defendants' motions, the Court perceives itself

to be without subject matter jurisdiction.    As such, the matter is

dismissed.

I.  Background

     Plaintiffs are two off-shore investment funds, Tradex Global

Master Fund, Ltd., and "Tradex Global Master Fund SPC Ltd., the ABL

Segregated Portfolio."    Each plaintiff is incorporated in the

British Virgin Islands. Although the Complaint is silent on the issue, plaintiffs have submitted evidence showing their principal place of business is in Connecticut. (Affidavit of Michael Beattie [Docket No. 58] ¶ 2.)

Between November 1, 2007, and September 1, 2008, plaintiffs purchased shares in Arrowhead Capital Finance, Ltd. ("the Fund"), a Bermuda mutual fund company. The Fund had previously been audited by PricewaterhouseCoopers ("PwC"), a Bermuda accounting firm.[1]

Another Bermuda company, Blue Point Management, Ltd. ("Blue Point"), managed the Fund. Blue Point's director and president during this period was James Fry, a Minnesota businessman. Fry also managed Arrowhead Capital Management, LLC ("ACM"), a Minnesota limited liability company, and Metro II, a Delaware limited liability company. (Compl. ¶ 38.)

Under Fry's management, the Fund purchased short-term debt securities from Fry-controlled entities, including Metro II and ACM. Metro II and ACM lent these funds to Petters' entities ostensibly to purchase electronics. Petters' entities supposedly warehoused these electronics for shipment to a wholesale retailer such as Sam's Club or Costco. The retailer was to pay for the

---

[1] Plaintiff's complaint does not set forth PwC's citizenship; however, PwC represents itself to be a citizen of Bermuda. (See Mem. of Law in Support of PricewaterhouseCoopers' Mot. to Dism. the Class Action Complaint [Docket No. 39] at 7.)

merchandise at prices far above Petters' cost, and Metro II and ACM in turn would repay the Fund with interest. (Compl. ¶ 2.)

In September 2008, a federal task force uncovered Petters' massive Ponzi scheme. Investigation revealed Petters' entities never purchased electronics, opting instead to simply report sales of high-definition televisions to wholesale merchants, and present investors with phony merchandise purchase orders. (Compl. ¶¶ 3-4.) The Fund entered liquidation, and plaintiffs' investments are now worthless. (Compl. ¶ 7).

On July 7, 2009, plaintiffs, seeking to represent themselves and other Fund investors, filed this lawsuit alleging defendants Fry, Blue Point, Metro II, and ACM fraudulently induced their investment in the Fund. Specifically, plaintiffs cite the Fund Offering Memorandum which assured investors electronics would be "pre-sold prior to funds being applied to the purchase of underlying inventory from suppliers; end-purchasers would be rated 1-A or better by Dun & Bradstreet; and inventory would be covered by UCC financing statements naming [the Fund] as the secured party." (Compl. ¶ 6). Plaintiffs claim defendants failed to follow these guidelines in light of evidence showing the Fund invested in transactions involving no inventory and no merchandise at all. (Compl. ¶ 34.) In addition, plaintiffs accuse defendants of preparing monthly status reports which misrepresented the Fund's financial returns. (Compl. ¶¶ 29, 35.) The Complaint accuses Fry

and Blue Point of breach of fiduciary duty, negligence, unjust enrichment, negligent misrepresentation, conversion and fraud. Plaintiffs assert similar claims against ACM and Metro II for negligence, unjust enrichment, conversion and aiding and abetting breach of fiduciary duty.

Plaintiffs further complain PwC, the Fund's outside auditor from 2003 to 2006, "conducted audits that were so superficial and perfunctory that it failed to detect that the assets reflected in the Fund's financial statements were a complete and total sham." (Compl. ¶ 9). In particular, plaintiffs claim PwC breached its duties to the Fund's shareholders, including breach of fiduciary duty, aiding and abetting others' breach of fiduciary duty, as well as negligence, negligent misrepresentation, and unjust enrichment.

Defendants each move to dismiss, pursuant to Federal Rules of Civil Procedure 12 and 9(b) ("Fed. R. Civ. P"). They argue the Court lacks subject matter jurisdiction, plaintiffs lack standing, and the Complaint fails to state a claim under Minnesota law. Plaintiffs oppose each motion.

II.  Discussion

    A.  Standard

When considering a Rule 12(b)(6) motion, the Court "accept[s] the factual allegations of the complaint as true, but the allegations must supply sufficient facts to state a claim to relief that is plausible on its face." O'Neil v. Simplicity, Inc., 574

F.3d 501, 502 (8th Cir. 2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A Court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotations omitted). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009).

B.  Subject Matter Jurisdiction

A federal court always begins each case by examining its jurisdiction. "Federal courts are courts of limited jurisdiction. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."

<u>Godfrey v. Pulitzer Pub. Co.</u>, 161 F.3d 1137, 1141 (8th Cir. 1998) (internal citations and quotations omitted).

Plaintiffs filed suit in federal court premised upon the diversity statute, which confers jurisdiction where the matter in controversy exceeds $75,000, and the dispute is between:

(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. 1332(a). Plaintiffs maintain 28 U.S.C. § 1332(a)(3) supplies a jurisdictional basis for this suit. (Compl. ¶ 11.)

The facts are undisputed. Each plaintiff is a foreign corporation incorporated under the laws of the British Virgin Islands. Plaintiffs responded to defendants' motions to dismiss by submitting an affidavit indicating both companies' principal place of business is located in Connecticut. (<u>See</u> Affidavit of Michael Beattie, Docket No. 58.) At oral argument, defense counsel did not dispute plaintiffs' assertion that Connecticut served as the companies' principal place of business. (Tr. 12:4-7.) Defendant Blue Point is incorporated in Bermuda; defendant Fry is a citizen of Minnesota; defendant Metro II is a Delaware limited liability company; and ACM is a Minnesota limited liability

company.[2]  The Complaint does not set forth PwC's citizenship, but PwC maintains, and plaintiffs do not dispute, it is a Bermuda citizen.  Under these facts, the Court cannot exercise subject matter jurisdiction over the parties.

"[J]urisdiction cannot be predicated on . . . [§ 1332](a)(3) because U.S. citizens are not on both sides of the controversy." U.S. Motors v. Gen. Motors Europe, 551 F.3d 420, 422 (6th Cir. 2008).  The diversity statute's words require there be "citizens of different States" as a threshold matter; thus, by its terms, it only permits jurisdiction over "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3).  This section does not confer jurisdiction where the only plaintiffs are foreign corporations.

Plaintiffs argue the Court may exercise diversity jurisdiction because the Court should view them as citizens of Connecticut, where they have their principal place of business.  The Court is not convinced.  Plaintiffs' affidavit, which simply avers each plaintiff "maintains its principal place of business in

_____

[2] Plaintiffs' complaint does not provide information regarding ACM or Metro II's members or their citizenship, but states they are citizens of Minnesota and Delaware respectively. (Pls.' Opp. to Defs.' Fry, Metro II & ACM's Mot. Dismiss 5.) "[A]n LLC's citizenship is that of its members for diversity jurisdiction purposes." GMAC Commer. Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004).  Because defendants do not dispute ACM or Metro II's citizenship, the Court accepts plaintiffs' representations based on "the complaint supplemented by undisputed facts evidenced in the record." Johnson, 534 F.3d at 962.

Connecticut," does not necessarily provide sufficient facts to resolve the issue. The Eighth Circuit Court of Appeals has held the location of a corporation's principal place of business is a mixed question of law and fact. See Capitol Indem. Corp. v. Russellville Steel Co., 367 F.3d 831, 836 (8th Cir. 2004), overruled on other grounds in Hertz Corp. v. Friend, 130 S. Ct. 1181, 1194-95 (2010).[3] However, as defendants do not challenge plaintiffs' assertion, the Court accepts it for purposes of this motion.

Even if Connecticut is plaintiffs' principal place of business, the Court is still without subject matter jurisdiction over the parties. As a general rule, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). Although the Eighth Circuit has not applied this statute to a foreign company, "those Circuits that have reached the issue are in agreement that § 1332(c) extends to alien corporations." JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd., 536 U.S. 88, 98 n.3 (2002). Plaintiffs argue the capitalized "State" in 1332(c)(1)

---

[3] The United States Supreme Court has recently adopted the "nerve center" test for determining a corporation's principal place of business, see Hertz Corp., 130 S. Ct. at 1192, which replaces the Eighth Circuit's "total activities" test. See Capitol Indem., 367 F.3d at 836.

refers only to the fifty U.S. States, not foreign states.  <u>See,</u>
<u>e.g.</u>, <u>MAS Capital, Inc. v. Biodelivery Sciences Int'l, Inc.</u>, 524
F.3d 831, 832 (7th Cir. 2008).  As such, plaintiffs reason they
should be considered citizens of Connecticut, and not the British
Virgin Islands, because the British Virgin Islands is not a "State"
under 1332(c)(1).  From this premise, plaintiffs argue that, as
Connecticut citizens, they meet section 1332(a)(3)'s diversity
requirements.  The Court disagrees.

Plaintiffs obviously chose to incorporate in the British
Virgin Islands for a reason, yet they ask the Court to pretend
Connecticut is their sole citizenship for diversity purposes.
Plaintiffs' awkward statutory analysis effectively asks this Court
to "pay no attention to the man behind the curtain."  This Court's
imagination is not so boundless.  Although the Eighth Circuit has
not addressed this question, this Court holds it must consider each
plaintiff's dual citizenship when deciding whether diversity
jurisdiction exists.

This conclusion is in accord with relevant case law, and
upholds Congress's purpose in enacting 28 U.S.C. § 1332(c)(1).
While plaintiffs cite non-binding case law for the proposition that
it should be considered solely a citizen of Connecticut and not the
British Virgin Islands, none of their proffered cases are directly
on point.  <u>See, e.g.</u>, <u>MAS Capital</u>, 524 F.3d at 832-33; <u>Cabalceta v.</u>
<u>Standard Fruit Co.</u>, 883 F.2d 1553, 1559 (11th Cir. 1989).  At least

two of plaintiff's proffered cases addressed "how § 1332 treats domestic corporations with principal places of business outside the United States," not foreign companies. <u>MAS Capital</u>, 524 F.2d at 832; <u>see also</u> <u>Cabalceta</u>, 883 F.2d at 1558 (addressing whether "a domestically incorporated defendant corporation can have a foreign principal place of business such that would defeat diversity jurisdiction against an alien plaintiff.") Plaintiffs do not cite, nor has this Court found, a case finding diversity jurisdiction over a foreign corporation asserting a U.S. principal place of business which is suing U.S. and alien citizens.

On the contrary, the only case law directly on point holds to the contrary. <u>See</u> <u>IGY Ocean Bay Properties, Ltd. v. Ocean Bay Properties I Ltd.</u>, 534 F. Supp. 2d 446, 448 (S.D.N.Y. 2008). In <u>IGY</u>, plaintiff corporations incorporated in the Carribean, but maintained principal places of business in New York. The foreign plaintiffs sought recovery against a Florida citizen and other foreign corporations. <u>Id.</u> at 447. The court found it had no reason "to pick and choose and to look solely at the principal place of business or solely at the state of incorporation to determine that diversity exists." <u>Id.</u> at 449. This Court agrees.

Indeed, such a decision would draw an unnatural distinction between foreign and U.S. corporations. In 1958, Congress specifically expanded "the definition of corporate citizenship for diversity purposes to include not only the state of incorporation,

but also the state of a corporation's principal place of business."
Capitol Indem., 367 F.3d at 835. When applying this statute to a
U.S. corporation, a court treats a corporation as a dual citizen.
See Domaine Serene Vineyards & Winery, Inc. v. Rynders, 2009 U.S.
Dist. LEXIS 1873, at *11 (D. Minn. Jan. 9, 2009) (finding no
diversity where a Minnesota-incorporated company with a principal
place of business in Oregon sued an Oregon citizen). Surely
Congress did not intend to treat U.S. companies as dual citizens
while allowing foreign companies to ignore their place of
incorporation when convenient.

Applying these concepts, the Court finds plaintiffs can
neither shed their British Virgin Islands citizenship, nor pretend
it does not exist when advantageous to do so. The Court considers
them dual citizens - "[i]f diversity fails under either of the
parties' citizenships, then diversity fails overall." IGY, 534 F.
Supp. 2d at 449. Plaintiffs are incorporated in the British Virgin
Islands. They have filed suit against citizens of Minnesota,
Delaware, and Bermuda. This Court cannot exercise diversity
jurisdiction over these foreign plaintiffs' suit against foreign
and U.S. citizens.

III. Conclusion

Where plaintiffs have failed to plead or prove diversity, this
Court dismisses their claims for lack of subject matter

jurisdiction.  Accordingly, IT IS ORDERED that defendants' motions to dismiss [Docket Nos. 28, 31 & 52] are granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  May 17, 2010

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge